## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA

HANCOCK WHITNEY BANK f/k/a
WHITNEY BANK,

           Plaintiff,

v.                                CASE NO.:_____

JACKSON NATIONAL LIFE
INSURANCE COMPANY,

           Defendant.
_____/

## COMPLAINT

    Plaintiff, HANCOCK WHITNEY BANK f/k/a WHITNEY BANK, successor to WHITNEY NATIONAL BANK, ("Whitney Bank"), by and through its undersigned counsel, sues Defendant, JACKSON NATIONAL LIFE INSURANCE COMPANY ("Defendant"), and alleges:

### Jurisdiction and Venue

    1.    This is an action for Breach of Contract, Breach of Implied Covenant of Good Faith and Fair Dealing, Wrongful Termination of Life Insurance Policy, and Unjust Enrichment.

    2.    Whitney Bank is a Mississippi banking organization organized under the laws of the State of Mississippi with its principal place of business located at 2510

14th Street, Gulfport, Mississippi 39501. Accordingly, Whitney Bank is a resident of Mississippi for diversity purposes.

3.    Defendant is a Michigan corporation with a principal place of business at 1 Corporate Way, Lansing, Michigan 48951. Accordingly, Defendant is a resident of Michigan for diversity purposes.

4.    Whitney Bank seeks damages against Defendant that are in excess of $75,000.00, exclusive of interest, fees, and costs.

5.    Defendant is an insurance company incorporated in the State of Michigan that is authorized to do business in the State of Florida and has and continues to operate, conduct, engage and carry on a business and/or business venture within the State of Florida and the Northern District of Florida.  Accordingly, Defendant is subject to the personal jurisdiction of the State of Florida and the Northern District of Florida.

6.    A substantial part of the events or omissions giving rise to the claim, and the substantial part of the property that is the subject of the action occurred in the State of Florida and the Northern District of Florida.

7.    Therefore, jurisdiction is conferred upon this Court pursuant to 28 U.S.C. § 1332 and venue is proper in the Northern District of Florida under 18 U.S.C. § 1391.

## Factual Background

8.      Whitney Bank, through its predecessor Whitney National Bank, had a loan in which John H. Tyler (the "Insured"), a resident of Escambia County, Florida, was an obligor.

9.      The Insured executed an absolute assignment in favor of Whitney National Bank of that certain Life Insurance Policy # 88004879 insuring the life of the Insured (the "Life Insurance Policy"). A true and correct copy of the assignment is attached hereto and incorporated herein as **Exhibit A**.

10.     Defendant, through its predecessor by merger, Valley Forge Life Insurance Company acknowledged the absolute assignment in favor of Whitney National Bank of the Life Insurance Policy and processed a change of ownership to Whitney National Bank.  A true and correct copy of the acknowledgment and change of ownership is attached hereto and incorporated herein as **Exhibit B**.

11.     Accordingly, since 2002, Whitney Bank has been and is the current owner of the Life Insurance Policy insuring the life of the Insured. A true and correct copy of the Life Insurance Policy is attached hereto and incorporated herein as **Exhibit C**.

12.     Additionally, since 2002 and at all relevant times, Whitney Bank has been the sole beneficiary of the Life Insurance Policy.

13.     The Grace Period provision of the Life Insurance Policy states, in part: "The grace period provision becomes effective in the event the Cash Surrender Value, as defined in Section 3, is not large enough to cover the next monthly deduction, also defined in Section 3. A grace period of 61 days will be granted for the payment of a premium large enough to cover the monthly deduction. <u>Notice of such premium will be mailed to your last known address</u>." See Exhibit C, page 8.

14.     Accordingly, per the terms and conditions of the Life Insurance Policy, Defendant was required to mail to Whitney Bank notice of non-payment of any premiums and/or that a grace period had been granted.

15.     Whitney Bank has always abided by all terms and conditions of the Life Insurance Policy and complied with all of Defendant's instructions, including timely remitting premiums due since 2002.

16.     In 2017, Defendant began taking actions to cause the Life Insurance Policy to lapse in coverage by acting in bad faith and unfair dealing, and the pattern of conduct has occurred again in 2022.  The Defendant's conduct, includes without limitation, the following actions:

   a.  providing inconsistent and incorrect information.

   b.  not timely processing address changes.

   c.  not providing required notices as required by applicable law.

    d.  not providing copies of required notices allegedly sent to Whitney Bank as required by applicable law.

    e.  requiring information and actions that are impossible for reinstatement.

<div align="center">

**<u>First Incident</u>**

</div>

17.    In August 2017, Whitney Bank submitted paperwork to Defendant changing Whitney Bank's address in Defendant's system from 25 Beltline Highway, Mobile, AL 36608 to Whitney Bank's current address of 25 West I-65 Service Road North, Mobile, AL 36608.  A true and correct copy of the change of address paperwork is attached hereto and incorporated herein as **Exhibit D**.

18.    On or about September 26, 2017, Whitney Bank received confirmation from Defendant that Defendant had updated Whitney Bank's address on file to 25 West I-65 Service Road North, Mobile, AL 36608.

19.    Therefore, as of September 26, 2017, Defendant was and still is required to send all notices and documents concerning the Life Insurance Policy to Whitney Bank's address of 25 West I-65 Service Road North, Mobile, AL 36608.

20.    On or about March 6, 2018, Defendant informed Whitney Bank that it was terminating the Life Insurance Policy due to Whitney Bank's alleged failure to remit a premium due to Defendant. A true and correct copy of the termination notice is attached hereto and incorporated herein as **Exhibit E**.

21.     Upon receipt of the termination notice, Whitney Bank's representative immediately called Defendant and was informed by Defendant's representative that Whitney Bank was still under the grace period.

22.     Defendant's representative further represented that if Whitney Bank sent a check in the amount of the premium via overnight delivery, there would be no issues.

23.     Based on Defendant's representations, Whitney Bank sent a check in the premium amount via overnight delivery (the "Check") to Defendant.

24.     On March 6, 2018, Whitney Bank's representative called Defendant again to inquire about the status of the Life Insurance Policy (the "March 6, 2018 Call").

25.     During the March 6, 2018 Call, Defendant's representative stated that Defendant had terminated the Life Insurance Policy on February 27, 2018, because there was insufficient cash value to cover the cost of insurance and expenses.

26.     Additionally, during the March 6, 2018 Call, Defendant's representative stated that she would mail reinstatement forms to Whitney Bank's address of 25 West I-65 Service Road North, Mobile, AL 36608.

27.     On March 15, 2018, Whitney Bank's representative called Defendant because Whitney Bank had yet to receive the reinstatement forms (the "March 15, 2018 Call").

28.     During the March 15, 2018 Call, Defendant's representative confirmed that Defendant had received the check and that a refund would be mailed to Whitney Bank.

29.     Whitney Bank's records establish that Defendant deposited the Check on March 5, 2018.

30.     On March 19, 2018, Whitney Bank's representative called Defendant yet again regarding the status of the Life Insurance Policy (the "First March 19, 2018 Call").

31.     During the First March 19, 2018 Call, and for the first time, Defendant's representative stated that Defendant had mailed letters to Whitney Bank on December 28, 2017 and January 28, 2018 regarding the insufficient cash value of the Life Insurance Policy (individually, interchangeably, and/or collectively the "Insufficient Cash Value Letters").

32.     Whitney Bank never received the Insufficient Cash Value Letters or any other correspondence from Defendant and Defendant has not provided Whitney Bank with any evidence of Whitney Bank's receipt of the Insufficient Cash Value Letters.

33.     Despite Whitney Bank complying with Defendant's former demands, Defendant's representative concluded the First March 19, 2018 Call by stating that

since the grace period commenced on December 28, 2017, he would be unable to assist Whitney Bank in reinstating the Life Insurance Policy.

34.     Shortly after the First March 19, 2018 Call, a "team lead" of Defendant called Whitney Bank regarding a grace letter (the "Second March 19, 2018 Call").

35.     During the Second March 19, 2018 Call, Defendant's "team lead" stated that a grace letter was mailed to Whitney Bank on January 22, 2018, which provided Whitney Bank thirty (30) days to mail Defendant a payment in the amount of $5,688.19 (the "Grace Letter").

36.     The "team lead" then stated that Defendant had mailed the Grace Letter to the address on file and that a response was due by Whitney Bank on February 28, 2018.

37.     Defendant's "team lead" also stated that there were no records available evidencing the Insufficient Cash Value Letters ever being generated and/or mailed to Whitney Bank.

38.     Whitney Bank never received the Grace Letter, but instead received a different letter requesting that Whitney Bank remit payment to Defendant in the amount of $2,816.63 and requesting that it confirm its address because the address on the letter was incorrect.

39.     Based on the information provided by Defendant's "team lead", Whitney Bank's representative requested that Defendant produce copies of all

letters allegedly mailed to Whitney Bank and confirmation that these letters were received by Whitney Bank.

40.    Despite Whitney Bank's amicable request for evidence of letters notifying Whitney Bank regarding insufficient cash value and missed payments, Defendant failed to provide Whitney Bank with said letters.

41.    At no time prior to the First Notice did Whitney Bank receive a notice of an unpaid premium, insufficient cash value, or any other reasons why the Life Insurance Policy would be cancelled.

42.    After Defendant had terminated the Life Insurance Policy and refused any reinstatement, Defendant began using Whitney Bank's correct address again.

43.    Eric Sander, a Vice President of Whitney Bank, then sent a letter to Defendant providing a description of the events that had transpired regarding the Life Insurance Policy. A true and correct copy of the letter is attached hereto and incorporated herein as **Exhibit F**.

44.    Defendant failed to respond to Eric Sander's written correspondence.

45.    On April 12, 2018, Whitney Bank, through its counsel, issued a formal demand to Defendant to fully reinstate the Life Insurance Policy on or before May 14, 2018. A true and correct copy of the letter is attached hereto and incorporated herein as **Exhibit G**.

46.     On May 3, 2018, Defendant responded to Whitney Bank and agreed to reinstate the Life Insurance Policy upon receipt of the premium payment. A true and correct copy of the letter is attached hereto and incorporated herein as **Exhibit H**.

47.     Upon receipt of Defendant's letter, on May 4, 2018, Whitney Bank immediately paid the premium in the amount of $8,750.00 and Defendant reinstate the Life Insurance Policy.  A true and correct copy of the letter is attached hereto and incorporated herein as **Exhibit I**.

48.     Even after Whitney Bank remitted the payment immediately pursuant to the Defendant's letter dated May 3, 2018, Defendant delayed reinstating the Life Insurance Policy for over two months until the week of June 18, 2018.  A true and correct copy of an email confirming reinstatement is attached hereto and incorporated herein as **Exhibit J**.

49.     Defendant's termination and subsequent reinstatement of the Life Insurance Policy in 2018 constitutes the making of a new contract for the purpose of incorporating into the policy changes in statutes regulating insurance contracts, including, but not limited to Fla. Stat. 627.4555.

50.     Fla. Stat. 627.4555 requires, in part, that: "Except as provided in this section, a contract for life insurance issued or issued for delivery in this state on or after October 1, 1997, covering a natural person 64 years of age or older, which has been in force for at least 1 year, may not be lapsed for nonpayment of premium

unless, after expiration of the grace period, and at least 21 days before the effective date of any such lapse, the insurer has mailed a notification of the impending lapse in coverage to the policyowner and to a specified secondary addressee if such addressee has been designated in writing by name and address by the policyowner. An insurer issuing a life insurance contract on or after October 1, 1997, shall notify the applicant of the right to designate a secondary addressee at the time of application for the policy, on a form provided by the insurer, and at any time the policy is in force, by submitting a written notice to the insurer containing the name and address of the secondary addressee. For purposes of any life insurance policy that provides a grace period of more than 51 days for nonpayment of premiums, the notice of impending lapse in coverage required by this section must be mailed to the policyowner and the secondary addressee at least 21 days before the expiration of the grace period provided in the policy."

51. Since reinstatement in 2018, Whitney Bank paid the annual premiums as they always have – until just recently in 2022 when Defendant began engaging in the same bad faith and unfair conduct.

## Second Incident

52. In March of 2022, Whitney Bank received a written notice from Defendant dated March 28, 2022, which informed Whitney Bank that the premium for the Life Insurance Policy would increase (the "March 28, 2022 Notice"). A true

and correct copy of the notice is attached hereto and incorporated herein as **Exhibit K**.

53.     The March 28, 2022 Notice needed a signed acknowledgement, which Whitney Bank executed and promptly returned in April 2022.

54.     On August 19, 2022, a representative of Whitney Bank called Defendant because Whitney Bank had still not received any notices or invoices from Defendant reflecting an increased premium (the "August 19, 2022 Call").

55.     During the August 19, 2022 Call, Defendant's representative informed Whitney Bank's representative that the Life Insurance Policy had been terminated on July 31, 2022 due to non-payment of the premium.

56.     During the August 19, 2022 Call, Whitney Bank's representative informed Defendant's representative that Whitney Bank had not received any notices regarding billing, termination or cancellation due to non-payment of the premium.

57.     During the August 19, 2022 Call, Defendant's representative informed Whitney Bank's representative that she would provide copies of the notices regarding billing, termination or cancellation due to non-payment of the premium.

58.     Whitney Bank never received the copies of the notices regarding billing, termination or cancellation due to non-payment of the premium that were discussed during the August 19, 2022 Call.

59.     However, Whitney Bank did receive reinstatement documents so that Whitney Bank could apply for reinstatement of the Life Insurance Policy (the "Reinstatement Documents"). A true and correct copy of the Reinstatement Documents are attached hereto and incorporated herein as **Exhibit L**.

60.     Once again, like its prior conduct, Defendant made it impossible to complete the reinstatement of the Life Insurance Policy because the Reinstatement Documents requires information pertaining to the Insured, who assigned the Life Insurance Policy to Whitney Bank approximately 20 years ago.

61.     On August 23, 2022, counsel for Whitney Bank called Defendant's representative, Kevin Schweda ("Mr. Schweda"), who assisted Whitney Bank with the Life Insurance Policy in 2018 when the Defendant engaged in this same pattern of bad faith conduct and unfair dealing.

62.     Counsel for Whitney Bank left a message explaining Whitney Bank's situation and similarities to the situation in 2018 (the "August 23, 2022 Voicemail").

63.     Mr. Schweda forwarded the August 23, 2022 Voicemail to Laurie Schaibly ("Ms. Schaibly"), who called counsel for Whitney Bank on August 26, 2022.

64.     During a call with Ms. Schaibly on August 26, 2022, counsel for Whitney Bank informed Ms. Schaibly of the current situation, the prior issue and similarities from 2018, the impossibility of completing the Reinstatement

Documents, and prior assignment of the Life Insurance Policy (the "August 26, 2022 Call").

65.     During the August 26, 2022 Call, Ms. Schaibly, on behalf of Defendant, represented to counsel for Whitney Bank that Whitney Bank would only need to pay $8,943.59 to reinstate the Life Insurance Policy, and not complete the Reinstatement Documents.

66.     Ms. Schaibly, on behalf of Defendant, stated that she would provide an invoice for the reinstatement by August 30, 2022, and provided an address for Whitney Bank to remit the payment via overnight delivery.

67.     Neither counsel for Whitney Bank nor Whitney Bank ever received the invoice from Ms. Schaibly, so counsel for Whitney Bank emailed Ms. Schaibly on August 31, 2022 following up on the status of the invoice so Whitney Bank could make the required payment for reinstatement immediately.  A true and correct copy of the email is attached hereto and incorporated herein as **Exhibit M**.

68.     Ms. Schaibly subsequently responded to counsel for Whitney Bank on August 31, 2022, contradicting Defendant's prior representation to Whitney Bank and now stating that Whitney Bank would need to complete the Reinstatement Documents for reinstatement review. A true and correct copy of the email is attached hereto and incorporated herein as **Exhibit N**.

69.     Counsel for Whitney Bank reminded her that Whitney Bank could not complete the reinstatement paperwork because it does not have the required information relating to the Insured. A true and correct copy of the email is attached hereto and incorporated herein as **Exhibit O**.

70.     In turn, Ms. Schaibly directed counsel for Whitney Bank to call Defendant's customer service. A true and correct copy of the email is attached hereto and incorporated herein as **Exhibit P**.

71.     On September 1, 2022, Whitney Bank, through its counsel, issued a formal demand to Defendant to fully reinstate the Life Insurance Policy on or before September 12, 2022 (the "September 12, 2022 Demand").  A true and correct copy of the demand is attached hereto and incorporated herein as **Exhibit Q**.

72.     As of the date of this Complaint, Defendant has not reinstated the Life Insurance Policy.

73.     As set forth herein, Defendant continues to engage in a pattern of dishonest, unfair, and bad faith conduct in a clear effort to cancel the Life Insurance Policy, as the Insured grows older.

74.     Whitney Bank has faithfully paid every invoice for every premium it has received from Defendant since 2002.  Yet, Defendant, after collecting more than $75,000 in premiums, is attempting unfairly and in bad faith to find any avenue possible to terminate the Life Insurance Policy.

75.     All conditions precedent to bringing this action have occurred or been waived.

76.     Despite Defendant's claims that it provided written notices to Whitney Bank, Whitney Bank never received any such notices regarding billing, termination and/or cancellation.

77.     At all times material, Whitney Bank has never intended for the Life Insurance Policy to terminate or become cancelled.

78.     Whitney Bank has always timely remitted premiums due under the Life Insurance Policy when it has received the proper notice and invoices.

79.     Whitney Bank has always been and remains willing to pay all necessary premiums required to reinstate the Life Insurance Policy.

<div align="center">

**COUNT I**
**<u>BREACH OF CONTRACT</u>**

</div>

80.     Whitney Bank realleges and reincorporates the allegations set forth in paragraphs 1 through 79 as if fully set forth herein.

81.     At no time prior to the termination of the Life Insurance Policy did Whitney Bank receive any notices regarding billing, termination and/or cancellation of the Life Insurance Policy.

82.     Pursuant to Fla. Stat. 627.4555 and the terms and conditions of the Life Insurance Policy, Defendant was required to provide Whitney Bank with all written notices regarding billing, termination and/or cancellation.

83.     If Defendant would have complied with the terms and conditions of the Life Insurance Policy and Fla. Stat. 627.4555, then Whitney Bank would have been able to remit the required premium(s) to Defendant and the Life Insurance Policy would not have been terminated.

84.     Therefore, but for Defendant's breach of the terms and conditions of the Life Insurance Policy and Fla. Stat. 627.4555, Whitney Bank was unable to remit the required premium(s) due under the Life Insurance Policy and the Life Insurance Policy would not have been terminated.

85.     Due to Defendant's failure to send the required notices to Whitney Bank's correct address, Whitney Bank failed to remit any premiums that were due under the Life Insurance Policy.

86.     As a direct and proximate result of Defendant's breach, Whitney Bank has been damaged in an amount that exceeds $75,000.00. The exact amount of damages suffered by Whitney Bank will be proved at trial. In addition, Whitney Bank will not receive the future benefit of the Life Insurance Policy, which has a face value of $500,000.00.

87.     Whitney Bank has employed the law firm of Carver, Darden, Koretzky, Tessier, Finn, Blossman & Areaux LLC to represent its interests herein, and as such, is obligated to pay Whitney Bank's attorneys a reasonable fee for their services.

WHEREFORE, Plaintiff respectfully demands judgment against Defendant Jackson National Life Insurance Company for:

(a) Compensatory damages;

(b) Court costs;

(c) Pre-judgment and post-judgment interest;

(d) Reasonable attorneys' fees and costs; and

(e) All other relief necessary to protect Plaintiff's rights.

## COUNT II
## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

88.     Whitney Bank realleges and reincorporates the allegations set forth in paragraphs 1 through 79 as if fully set forth herein.

89.     Pursuant to the terms and conditions of the Life Insurance Policy and Fla. Stat. 627.4555, Defendant had a duty to send notices to Whitney Bank concerning the Life Insurance Policy, including, but not limited to notices regarding billing, termination and/or cancellation.

90.     Defendant breached the Life Insurance Policy by failing or refusing to send notices regarding billing, termination and/or cancellation to Whitney Bank.

91.     Defendant's failure or refusal to send the notices was not prompted by an honest mistake, bad judgment, or negligence, but was rather a conscious and deliberate act, which unfairly frustrated the agreed common purpose and

disappointed the reasonable expectations of Whitney Bank in maintaining coverage under the Life Insurance Policy.

92.      As a result of Defendant's failure or refusal to provide the notices regarding billing, termination and/or cancellation to Whitney Bank, the Life Insurance Policy was terminated, and Whitney Bank has been deprived of the benefits under the Life Insurance Policy.

93.      Whitney Bank has employed the law firm of Carver, Darden, Koretzky, Tessier, Finn, Blossman & Areaux LLC to represent its interests herein, and as such, is obligated to pay Whitney Bank's attorneys a reasonable fee for their services.

WHEREFORE, Plaintiff respectfully demands judgment against Defendant Jackson National Life Insurance Company for:

(a) Compensatory damages;

(b) Court costs;

(c) Pre-judgment and post-judgment interest;

(d) Reasonable attorneys' fees and costs; and

(e) All other relief necessary to protect Plaintiff's rights.

## COUNT III
## WRONGFUL TERMINATION OF LIFE INSURANCE POLICY

94.      Whitney Bank realleges and reincorporates the allegations set forth in paragraphs 1 through 79 as if fully set forth herein.

95.     Defendant wrongfully terminated the Life Insurance Policy for non-payment of premium(s), while simultaneously accepting and retaining premium payment.

96.     Defendant did not mail Whitney Bank a notice of non-payment of the increased premium and/or that a grace period had been granted, as required by the Life Insurance Policy and Fla. Stat. 627.4555.

97.     Defendant did not notify Whitney Bank of its right to designate a secondary addressee at the time the Life Insurance Policy was reinstated in 2018, nor any time thereafter.

98.     Had Whitney Bank received such notice of its right to designate a secondary addressee from Defendant, Whitney Bank would have provided a secondary addressee.

99.     Defendant terminated the Life Insurance Policy in violation of the terms and conditions of the Life Insurance Policy and provisions of Fla. Stat. 627.4555, causing Whitney Bank to lose all value and benefit of the Life Insurance Policy.

100.     Whitney Bank is entitled to have the Life Insurance Policy reinstated, subject to the payment of any premiums owed.

101.     Whitney Bank is further entitled to designate a secondary addressee to receive notification of impending lapses.

102.     Defendant has failed and refuses to reinstate the Life Insurance Policy without information from the Insured, which Whitney Bank cannot obtain.

103.     Whitney Bank has employed the law firm of Carver, Darden, Koretzky, Tessier, Finn, Blossman & Areaux LLC to represent its interests herein, and as such,  is obligated to pay Whitney Bank's attorneys a reasonable fee for their services.

WHEREFORE, Plaintiff respectfully demands judgment against Defendant Jackson National Life Insurance Company for:

(a) Compensatory damages;

(b) Court costs;

(c) Pre-judgment and post-judgment interest;

(d) Reasonable attorneys' fees and costs; and

(e) All other relief necessary to protect Plaintiff's rights.

**COUNT IV (in the alternative)**
**<u>UNJUST ENRICHMENT</u>**

104.     In the alternative, Whitney Bank pleads this action for unjust enrichment.

105.     Whitney Bank conferred benefits on Defendant through the payments of premiums due on the Life Insurance Policy.

106.     Defendant knew or should have known of the benefits conferred upon it by Whitney Bank were to ensure that Whitney Bank would maintain coverage

under the Life Insurance Policy.

107.   Despite knowing of Whitney Bank's intention to maintain coverage under the Life Insurance Policy, Defendant cancelled the Life Insurance Policy without providing notice to Whitney Bank.

108.   As a result of Defendant's actions, Defendant has been unjustly enriched, and Whitney Bank has suffered substantial damages by paying premiums on the Life Insurance Policy that Whitney Bank had no intention of cancelling.

109.   Whitney Bank has faithfully paid every invoice for every premium it has received from Defendant since 2002.  Yet, Defendant, after collecting more than $75,000 in premiums, is attempting unfairly and in bad faith to find any avenue possible to terminate the Life Insurance Policy.

110.   Whitney Bank has conferred a benefit on Defendant, which Defendant has accepted and retained for approximately twenty years under circumstances which are not just, equitable or conscionable for Defendant to retain such funds without paying them over to Whitney Bank with interest.

111.   Whitney Bank has employed the law firm of Carver, Darden, Koretzky, Tessier, Finn, Blossman & Areaux LLC to represent its interests herein, and as such, is obligated to pay Whitney Bank's attorneys a reasonable fee for their services.

WHEREFORE, Plaintiff respectfully demands judgment against Defendant Jackson National Life Insurance Company for:

(a) Restitution damages;

(b) Court costs;

(c) Pre-judgment and post-judgment interest;

(d) Reasonable attorneys' fees and costs; and

(e) All other relief necessary to protect Plaintiff's rights.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial for all issues so triable.

Dated this 12th day of January 2022.

<div style="margin-left: 40%;">

CARVER, DARDEN, KORETZKY, TESSIER, FINN, BLOSSMAN & AREAUX LLC

By:*/s/ Robert S. Rushing*
    Robert S. Rushing, Esquire
    Florida Bar No.: 0013946
    rushing@carverdarden.com
    Travis M. Morock, Esquire
    Florida Bar No.: 0118823
    morock@carverdarden.com
    William R. Hahn, Esquire
    Florida Bar No.: 1025424
    hahn@carverdarden.com
    151 W. Main St., Suite 200
    Pensacola, Florida 32502
    Telephone: (850) 266-2300
    Attorneys for Plaintiff,
    HANCOCK WHITNEY BANK
    F/K/A WHITNEY BANK

</div>