UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

HANCOCK WHITNEY BANK f/k/a
WHITNEY BANK,

    Plaintiff,

v.                            Case No. 3:23-cv-00436-MCR-HTC

JACKSON NATIONAL LIFE
INSURANCE COMPANY,

    Defendant.
_____/

**DEFENDANT JACKSON NATIONAL LIFE
INSURANCE COMPANY'S MOTION TO DISMISS**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Jackson National Life Insurance Company ("Jackson") moves to dismiss Plaintiff Hancock Whitney Bank f/k/a Whitney Bank's ("Whitney Bank" or the "Bank") Complaint. The Complaint, its exhibits, and documents incorporated by reference therein clearly show that Whitney Bank has no cognizable claims against Jackson.

**INTRODUCTION**

In this action, Whitney Bank, a sophisticated banking company, tries to blame Jackson for its own failure to pay premiums. Whitney Bank is the owner of Jackson Life Insurance Policy No. 88004879, assigned to the Bank by one of its former borrowers, John T. Tyler (the "Tyler Policy"). On July 31, 2022, Jackson terminated the Tyler Policy after the Bank failed to pay the quarterly premium payment due months before.

The Bank concedes that it never paid the quarterly premium payment. Yet, the Bank contends that Jackson's termination of the Tyler Policy was wrongful. Specifically, the Bank

1

claims that Jackson never provided written notices regarding "billing, termination and/or cancellation," in violation of the Tyler Policy and section 627.4555, Florida Statutes. (*See generally* Compl., Doc. 1).

Of course, section 627.4555 does not apply to the Tyler Policy, which was issued before that statute took effect. In any event, documents incorporated by reference in the Complaint confirm that Jackson complied with all applicable notice obligations, *as well as* the inapplicable notice requirements of section 627.4555. The Bank's predicate allegation is that Jackson failed to mail notices of billing, grace period, and policy lapse to the Bank's correct address. (Compl., Doc. 1 ¶ 85). But the notices themselves (the ones the Bank claims not to have received) show that Jackson, in fact, used the Bank's correct address. Because those documents, incorporated by reference in the Complaint, refute the Bank's allegation that Jackson did not use a correct address, that allegation need not be credited. And without that allegation, all of the Bank's claims fail. Further, because the law only required that Jackson *send* notices, which it did, and not that those notices be *received*, the Bank's contention that it never received the notices cannot save its claims.

In addition, several of the Bank's claims fail as a matter of law for independent reasons. Count III should be dismissed because a claim for "Wrongful Termination of Life Insurance Policy" is not a recognized cause of action under Florida law. Likewise, the Court should dismiss Count IV for unjust enrichment because a claim for unjust enrichment cannot lie where, as here, a valid, enforceable contract admittedly governs the dispute.

## RELEVANT BACKGROUND

As a preliminary matter, the Bank attaches the wrong policy as Exhibit C to its Complaint. That policy, No. VIOR01054, covers Ray Frank Cowick, and is not the policy at issue. The correct policy, No. 88004879, covers John Tyler, and is attached here as **Exhibit A**.[1]

Although the Complaint spends pages discussing alleged events from 2017 and 2018 (Compl., Doc. 1 ¶¶ 17–51), the events at issue for the Bank's claims in this action began in 2022.[2] Specifically, on March 28, 2022, Jackson mailed a letter to the Bank at its correct address—Hancock Whitney Bank, 25 W I-65 Service Road North, Mobile, AL 36608—informing the Bank that the Tyler Policy's planned periodic premium would increase to $6,913.38 and requiring the Bank to execute a form authorizing the increase. (Compl., Doc. 1 ¶ 52; Doc. 1-11). There is no dispute the Bank received the letter, as the Bank returned the signed authorization form to Jackson on April 5, 2022. (Compl., Doc. 1 ¶ 53).

The Bank, however, never paid this increased premium amount. (*Id.* ¶ 55). In fact, over the next four months, the Bank made no payment at all, which resulted in Jackson terminating the Tyler Policy pursuant to the Policy's terms on July 31, 2022. (*Id.*)

The Bank contends that the cancellation was in error. According to the Bank, it never had an obligation to pay the quarterly premium amount, despite agreeing to the increase, because it never received a billing notice reflecting the updated amount. (*Id.* ¶¶ 54–55, 78). And according to the Bank, Jackson's termination of the Tyler Policy was improper because the Bank claims also

---

[1] The Tyler Policy is incorporated by reference into the Complaint and may be considered without converting this motion into one for summary judgment because it is referenced in the Complaint and is central to Plaintiff's claims. *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002); (Compl., Doc. 1, *passim*).

[2] While Jackson disputes Plaintiff's characterization of those historical events, they are not relevant for the Court's consideration of this motion to dismiss.

to have never received a notice of grace period or a notice of cancellation prior to the Policy's lapse. (*Id.* ¶¶ 76, 81). The Bank also wrongly alleges that Jackson failed to mail those notices to the correct address and that Jackson never notified it of the right to designate a secondary addressee. (*Id.* ¶¶ 85, 97).

The Bank's contention that Jackson, after mailing the notice of increased premium to the correct address in March 2022, somehow then mailed a billing notice, notice of grace period, and notice of policy lapse to a *different* address in the months thereafter is certainly implausible on its face. Setting that aside, however, the allegedly unreceived notices themselves, which are incorporated by reference in the Complaint, show that Jackson used the correct address.[3]

Specifically, Jackson mailed to the Bank's correct address a billing notice in April 2022, which stated that the quarterly planned premium amount of $6,913.38 was due on May 28, 2022. *See* Ex. B. Then, on May 31, 2022, Jackson mailed to the Bank's correct address the Tyler Policy's Annual Statement, which showed that the Tyler Policy's Accumulation Value was *negative* $1,929.62 and stated: "IF NO FURTHER PREMIUMS ARE RECEIVED, ASSUMING GUARANTEED ASSUMPTIONS, ON MAY 28, 2022 YOUR POLICY WILL HAVE INSUFFICIENT VALUE TO REMAIN IN FORCE." *See* Ex. C. Then, after the Bank failed to pay the quarterly premium payment of $6,913.38 when due, Jackson mailed to the Bank's correct address a Notice of Policy Grace Period on June 27, 2022, which required the Bank to pay its past due premiums "on or before July 31, 2022." *See* Ex. D. And after the Bank failed to make payment

---

[3] All three notices, as well as the Tyler Policy's annual statement, are incorporated by reference in the Complaint and may be considered without converting this motion into one for summary judgment because they are referenced in the Complaint and are central to Plaintiff's claims. *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002); (Compl., Doc. 1 ¶¶ 13–14, 16, 58, 76, 81–82, 85, 89–90, 96, 107). A Plaintiff's "[c]onclusory allegations and unwarranted deductions of fact are not admitted as true" for purposes of a motion to dismiss. *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1263 (11th Cir. 2004) (citation omitted).

on or before July 31, 2022 (Compl., Doc. 1 ¶ 55), Jackson terminated the Tyler Policy due to insufficient cash value to cover the cost of insurance and expenses and mailed to the Bank's correct address a Notice of Policy Lapse on July 31, 2022. *See* Ex. E.

Although the Bank claims that it received *none* of the four notices[4] just discussed, and contends that *none* were mailed to the correct address, all four of the notices were, in fact, addressed correctly: "Hancock Whitney Bank, 25 W I-65 Service Road North, Mobile, AL 36608." *See* Ex. B; Ex. C; Ex. D; Ex. E; (*see also* Compl., Doc. 1 ¶ 17). And the Bank directly contradicts its claim that it *never* received "notice of its right to designate a secondary addressee" with its own Complaint's Exhibit L. (Doc. 1-12 at 4 (indicating the right to designate a secondary addressee)).

Now, the Bank brings the current suit, seeking to reinstate the Tyler Policy in full. (Compl., Doc. 1 ¶ 100). Jackson has offered the Bank the opportunity to apply for reinstatement of the Tyler Policy. (*Id.* ¶ 68). However, the Bank has refused to apply for reinstatement, claiming that it would be "impossible" to do so. (*Id.* ¶¶ 16(e), 60). The Bank instead brings claims for breach of contract, breach of implied covenant of good faith and fair dealing, and wrongful termination of life insurance policy claims based on an alleged failure to send notices under section 627.4555 and the Tyler Policy. (*Id.* ¶¶ 82, 90, 96). The Bank also brings an unjust enrichment claim in the alternative based on these same alleged failures to send notices, although the Bank does not dispute that the Tyler Policy is a valid, enforceable contract. (*Id.* ¶¶ 104–111).

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S.

---

[4] Because the notice of grace period and notice of policy lapse were mailed in duplicate, the Bank is really implausibly claiming that it did not receive a single one of the **six separate notices** that Jackson sent.

662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. (quoting *Twombly*, 550 U.S. at 555). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted).

Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678 (citing *Twombly*, 550 U.S. at 556). Allegations that are mere "legal conclusions," without factual support, must be disregarded. *See Iqbal*, 556 U.S. at 664. In addition, allegations that are contradicted by documents referred to and relied on in the complaint cannot be credited. *See Infante v. Bank of America Corp.*, 468 F. App'x 918, 921 n.2 (11th Cir. 2012); *Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009).

## ARGUMENT

I.  **Jackson complied with its notice obligations, and therefore, all of the Bank's claims must be dismissed**

The foundational allegation underlying all of the Bank's claims is the contention that Jackson failed to comply with its notice obligations under Florida law and the Tyler Policy. But documents incorporated by reference into the Complaint confirm that Jackson, in fact, complied with all of its notice obligations. As such, the Court should dismiss the Complaint in its entirety.

As an initial matter, the Bank misstates Jackson's notice obligations. The Bank primarily relies on section 627.4555, Florida's "Secondary Notice" statute. But by its plain text, that statute only applies to policies issued "on or after October 1, 1997." Fla. Stat. § 627.4555(1); *see also*

*Jackson Nat'l Life Ins. Co. v. Lovallo*, 8 So. 3d 1242, 1244 (Fla. 1st DCA 2009) (confirming the secondary notice statute only applies "to policies issued on or after October 1, 1997" and thus has no application to policies issued before then). The Tyler Policy, however, was issued in 1993, which means it is not subject to the notice requirements of section 627.4555.

The Bank attempts to avoid the plain language of the statute by arguing that the Tyler Policy's reinstatement in 2018 should be treated as if it were a new "issuance" of the Tyler Policy for the purposes of section 627.4555. But Florida law says just the opposite. "Under Florida law, it is axiomatic that the reinstatement of an insurance policy constitutes the insurer's waiver of any default which caused the policy to lapse or terminate, and operates to continue the parties' contractual obligations as if the default had never occurred." *Traturyk v. W.-S. Life Assurance Co.*, No. 615CV1347ORL40TBS, 2016 WL 4369999, at *5 (M.D. Fla. Aug. 16, 2016) (citations omitted). When a contract is reinstated, "the terms of the old contract become the terms of the revived contract." *Winer v. New York Life Ins. Co.*, 190 So. 894, 899 (Fla. 1938). In a reinstatement, "[t]here is no new contract . . . issued" because the "reinstatement is rather a contract for the continuance in force of the former contract." *Id.* When an insurance company accepts an application for reinstatement, it waives "a default which had occurred in the original contract," but it "[does] not create a new contract." *New York Life Ins. Co. v. Tedder*, 153 So. 145, 148 (Fla. 1933).

Thus, section 627.4555 did not govern Jackson's notice requirements under the Tyler Policy; the terms of the Tyler Policy itself governed those requirements. And under the Tyler Policy's plain language, Jackson had only an obligation to provide notice that the Tyler Policy had entered its grace period (which, as explained below, Jackson did), and no obligation to provide billing notices or even a notice of policy lapse. Ex. A at 8; *see also Ayodele v. Primerica Life Ins.*

*Co.*, No. 09-21267-CIV, 2010 WL 3743814, at *4 (S.D. Fla. Sept. 22, 2010) (policy did not require notice of termination). That Jackson had no obligation even to send billing notices makes good sense. After all, the Bank is responsible for paying its premiums; Jackson is not legally obligated to make sure that the Bank pays its bills. *Ayodele*, 2010 WL 3743814, at *4 (holding that it was the policy holder's job, not the insurer's, "to ensure that [the policy holder] timely made all of his required premium payments").

In any event, documents incorporated by reference into the Complaint confirm that Jackson complied with not only the Tyler Policy's notice obligations, but even the inapplicable notice provisions of section 627.4555. The Bank alleges that Jackson failed to mail billing, grace period, and termination notices to the Bank's correct address (despite having mailed earlier notices to the Bank's correct address). (Compl., Doc. 1 ¶ 85). But those very notices that the Bank claims not to have received confirm that Jackson used the correct address for those notices and also for the Policy's annual statement: "Hancock Whitney Bank, 25 W I 65 Service Road North, Mobile, AL 36608." *See* Ex. B; Ex. C; Ex. D; Ex. E. Because the Bank's predicate allegations that Jackson used the incorrect address for mailing the billing, grace period, and termination notices is refuted by those very documents, the Court should not credit those allegations. *See Jackson*, 372 F.3d at 1262–63; *Infante*, 468 F. App'x at 921 n.2; *Crenshaw*, 556 F.3d at 1292. And without those allegations, Counts I through IV cannot stand. All four claims are based on the Bank's erroneous allegations that Jackson did not mail the billing, grace period, and termination notices to the Bank's correct address.

The fact that the Bank contends that it never received those notices is also not sufficient to save the Bank's claims. All that is required under the Tyler Policy—and Florida law—is that the notices be *mailed*, not that the policy owner *receive* the notices. When a Florida insurance policy

requires notices to be "mailed" to the Policy owner, "notice to the insured is deemed to be complete upon mailing, even if the insured does not actually receive the notice." *Umerah v. John Hancock Life Ins. Co. (USA)*, No. 3:10-CV-289-J-32JRK, 2011 WL 13239536, at *8 (M.D. Fla. July 29, 2011) (quoting *Best Meridian Ins. Co. v. Tuaty*, 752 So. 2d 733, 735 (Fla. 3d DCA 2000)), *report and recommendation adopted sub nom.*, *Umerah v. John Hancock Life Ins. Co.*, No. 3:10-CV-289-J-32JRK, 2011 WL 13295352 (M.D. Fla. Sept. 14, 2011), *aff'd sub nom. Umerah v. John Hancock Life Ins. Co. (USA)*, 458 F. App'x 880 (11th Cir. 2012). Were it otherwise, then a policy holder could fabricate claims simply by contending that it did not receive notices that were, in fact, mailed. And because the notices that the Bank claims not to have received show that they were, in fact, mailed to the correct address, the Bank's claims that Jackson breached the Tyler Policy fail. At the end of the day, it was the Bank's responsibility to make sure it paid its premiums, not Jackson's.

II.  **Count III also fails because Florida does not recognize an independent cause of action for "Wrongful Termination of a Life Insurance Policy."**

Setting aside the infirmity of the Bank's predicate allegations that Jackson violated the policy by failing to send "required" notices to the Bank's correct address, Count III fails for an independent reason. That is, under Florida law, there is no independent claim for "Wrongful Termination of a Life Insurance Policy." That was the exact holding of the court in *Ayodele*, where the court dismissed a similar claim after the plaintiff failed to "cite any authority that such a cause of action exists" under Florida law. *Ayodele*, 2010 WL 3743814, at *2 n.4. Additionally, section 627.4555 (even if it did apply, and it does not) does not provide a private cause of action. *See Lemy v. Direct Gen. Fin. Co.*, 885 F. Supp. 2d 1265, 1272–73 (M.D. Fla. 2012), *aff'd*, 559 F. App'x 796 (11th Cir. 2014). And where there is no statutory right to bring a claim under the Florida Insurance Code, a Court has no authority to "legislate a cause of action where none exists." *Id.* at 1273

(citation omitted). As such, this Court must dismiss Count III because there is no common law or statutory authority recognizing an independent "Wrongful Termination of a Life Insurance Policy" claim.

### III. Count IV for unjust enrichment fails because the Bank concedes there is a valid life insurance contract governing the parties' dispute.

Finally, the Bank's unjust enrichment claim must fail because there is no dispute that the Tyler Policy is a valid, enforceable contract that governs the parties' dispute.

A plaintiff fails to state a claim for unjust enrichment under Florida law where there is a valid express contract governing the dispute. In Florida, "[i]t is well settled that the law will not imply a contract where an express contract exists concerning the same subject matter." *Kovtan v. Frederiksen*, 449 So. 2d 1, 1 (Fla. 2d DCA 1984) (collecting cases). In other words, when it is undisputed that an express contract exists, a claim for unjust enrichment fails. *Degutis v. Fin. Freedom, LLC*, 978 F. Supp. 2d 1243, 1265–66 (M.D. Fla. 2013); *see also Cent. Magnetic Imaging Open MRI of Plantation, Ltd. v. State Farm Mut. Auto. Ins. Co.*, 789 F. Supp. 2d 1311, 1317 (S.D. Fla. 2011) ("As there is a valid express contract that no party challenges, Plaintiff may not recover under unjust enrichment, and may not assert it as an alternative claim under Federal Rule 18.").

Here, both the Bank and Jackson concede that the Policy is a valid, enforceable contract. (Compl., Doc. 1 ¶¶ 9–12, 81–85, 89–92, 95–96, 99–100, 105–08); *see also* Ex. A. Therefore, the Bank's claim for unjust enrichment must also be dismissed.

### CONCLUSION

Because the allegations that Jackson did not comply with section 627.4555—which does not even apply to the Tyler Policy—and did not comply with the terms of the Tyler Policy are directly contradicted by the documents incorporated by reference into the Complaint, the Court should find that the Bank cannot state a claim against Jackson related to the lapse of the policy and

should dismiss the Complaint against Jackson with prejudice. Additionally, Count III should be dismissed because it attempts to assert a claim that does not exist under Florida law, and Count IV fails because neither party disputes that the Tyler Policy is a valid, enforceable contract.

Dated: March 27, 2023

        Respectfully submitted,

        */s/ Diana N. Evans*
        Diana N. Evans (Fla. Bar No. 98945)
        Email: dnevans@bradley.com
        Bradley Arant Boult Cummings LLP
        100 North Tampa Street, Suite 2200
        Tampa, FL 33602
        Telephone: (813) 559-5500
        Facsimile: (813) 229-5946

        *Attorney for Jackson National Life Insurance Co.*

## CERTIFICATE OF SERVICE

   I hereby certify that on March 27, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

**OF COUNSEL:**
CARVER, DARDEN, KORETZKY, TESSIER,
FINN, BLOSSMAN & AREAUX LLC
Robert S. Rushing, Esquire
Florida Bar No.: 0013946
rushing@carverdarden.com
Travis M. Morock, Esquire
Florida Bar No.: 0118823
morock@carverdarden.com
William R. Hahn, Esquire
Florida Bar No.: 1025424
hahn@carverdarden.com
151 W. Main St., Suite 200
Pensacola, Florida 32502
Telephone: (850) 266-2300

*Attorneys for Plaintiff*

            */s/ Diana N. Evans*
            *Attorney for Jackson National Life Insurance Co.*