UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**HANCOCK WHITNEY BANK,**

    **Plaintiff,**

v.                                    **CASE NO. 3:23cv436-MCR-HTC**

**JACKSON NATIONAL LIFE
INSURANCE COMPANY,**

    **Defendant.**
_____/

# ORDER

Plaintiff Hancock Whitney Bank ("Whitney Bank") brought suit against Defendant Jackson National Life Insurance Company ("Jackson") over Jackson's termination of a life insurance policy assigned to Whitney Bank.[1] Jackson moves to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 10. After careful review, the Court grants the motion in part and denies the motion in part.

---

[1] The Court has jurisdiction under 28 U.S.C. § 1332(a). The parties' citizenships are alleged to be diverse—Whitney Bank is a Mississippi banking organization with its principal place of business in Gulfport, Mississippi, and Jackson is a Michigan corporation with its principal place of business in Lansing, Michigan. The amount in controversy is met because the dispute centers on liability under a life insurance policy with a face value of $500,000 face value. *See Guardian Life Ins. Co. of America v. Muniz*, 101 F.3d 93 (11th Cir. 1996) (holding the face value of a life insurance policy satisfies the amount in controversy over the validity of the policy even when the condition precedent to liability under the policy—death of the insured—has not occurred).

**Background**

Taking as true the factual allegations of the Complaint, in 2002, Whitney Bank through its predecessor accepted the assignment of a life insurance policy issued in 1993 on the life of John T. Tyler, Policy No. 88004879,[2] to secure a loan indebtedness. Jackson, through its predecessor, acknowledged the assignment on April 9, 2002, and processed a change of ownership making Whitney Bank the sole beneficiary.  The policy includes the following provision, requiring a grace period and notice by mail before a policy is cancelled:

> The grace period provision becomes effective in the event the Cash Surrender Value, as defined in Section 3, is not large enough to cover the next monthly deduction, also defined in Section 3.
>
> A grace period of 61 days will be granted for the payment of a premium large enough to cover the monthly deduction. Notice of such premium will be mailed to your last known address.

---

[2] The Complaint states inconsistently that the insured was John H. Tyler and John T. Tyler. The assignment attached to the Complaint is signed by "John Thomas Tyler," ECF No. 1–1, and the parties seem to agree that John T. Tyler is the named insured.  More confusion arises because Whitney Bank's Complaint references Policy No. 88004879 as the policy in dispute that insures the life of John T. Tyler, but it attached to the Complaint a 2-page Policy Schedule for Policy No. VIORO10548, naming Ray Frank Cowick as the insured (purporting to be the policy at issue). Through the motion and response, the parties have clarified and acknowledged that the Cowick policy is not the correct policy, and Jackson attached what purports to be a copy of the correct policy, Policy No. 88004879 (John T. Tyler, insured), to its Motion to Dismiss.  Jackson also submitted an email to show that it sent a copy of this policy to Whitney Bank in November 2022, well before suit was filed in January 2023, ECF No. 19–1, but no affidavit accompanies the policy, and Whitney Bank maintains that it has been unable to verify that this as a true and correct copy. Consequently, the Court limits this review to the policy language as quoted in the Complaint.

CASE NO. 3:23cv436-MCR-HTC

ECF No. 1 at 4.[3]  Whitney Bank alleges that since the assignment, it has complied with all instructions and conditions and has remitted timely premium payments for every invoice received, but Jackson nonetheless terminated the policy without notice on July 31, 2022.

Whitney Bank alleges that in 2017 and again in 2022, Jackson took a series of actions amounting to a pattern of failing to send notices to the correct address and providing misinformation regarding reinstatement designed to cause the policy to lapse in coverage before the insured's death.  The first incident occurred when Whitney Bank received a notice of policy termination dated February 27, 2018, mailed to its correct address, which informed Whitney Bank that the policy had been terminated due to insufficient cash value to cover the cost of insurance and expenses, but "you may be eligible to reinstate your policy" with evidence of insurability, underwriting approval and payment of all past due premiums.  ECF No. 1–5. Whitney Bank had not received any prior notices.  When it called to inquire further, a Jackson representative informed Whitney Bank that if it sent the premium payment overnight, there would be no issue.  Whitney Bank sent the check and called to

---

[3] The quote is in the Complaint, and the same language is included in Policy No. 88004879, insuring the life of John T. Tyler that Jackson provided.  Despite Whitney Bank's refusal to admit the authenticity of Jackson's exhibit, the parties do not dispute that this language is in the policy at issue.

confirm its receipt (Jackson deposited the check on March 5, 2018) but was informed that reinstatement forms were also required and would be mailed to Whitney Bank. When they were not received a week later, Whitney Bank called again and was told the check would be refunded. In another call on March 19, 2018, Whitney Bank was informed for the first time that insufficient cash value letters (termination notices) purportedly had been mailed on December 28, 2017 and January 28, 2018, and consequently, the grace period began on December 28, 2017, so Jackson was unable to reinstate. Whitney Bank also received conflicting information about the amount needed for reinstatement. Whitney Bank requested copies of the letters but never received them and assumed the letters had been sent to the wrong address. After Whitney Bank made a formal demand for reinstatement, Jackson agreed to reinstate the policy, and Whitney paid a premium of $8,750 on May 4, 2018. After this, Jackson allegedly delayed but did reinstate the policy on June 18, 2018. Thereafter, Jackson began to use Whitney Bank's correct address again. Whitney Bank alleges that this reinstatement in 2018 constituted a new contract for purposes of incorporating into the policy any changes in the statutes regulating insurance, and therefore, Fla. Stat. § 627.4555 (effective only as to policies issued after October 1,

Page 5 of 13

1997) has been incorporated into the policy, requiring mailed notice at least 21-days before the effective date of a policy lapse.[4]

A second similar pattern of conduct allegedly occurred in 2022. In March 2022, Jackson sent Whitney Bank notice (to its correct address) of a policy premium increase, and Whitney Bank executed the required acknowledgement in April 2022. But by August, Whitney Bank had not received an invoice, and as a result, its representative called Jackson on August 19, 2022, to inquire and was informed that the policy had been terminated on July 31, 2022, due to non-payment of the premium. Whitney Bank alleges it did not receive any written notices regarding billing, termination, cancellation, or a grace period. During the call, a Jackson representative indicated she would provide the requested copies of notices and an

---

[4] The statute provides in part:

> (1) Except as provided in this section, a contract for life insurance issued or issued for delivery in this state on or after October 1, 1997, covering a natural person 64 years of age or older, which has been in force for at least 1 year, may not be lapsed for nonpayment of premium unless, after expiration of the grace period, and at least 21 days before the effective date of any such lapse, the insurer has mailed a notification of the impending lapse in coverage to the policyowner and to a specified secondary addressee if such addressee has been designated in writing by name and address by the policyowner. An insurer issuing a life insurance contract on or after October 1, 1997, shall notify the applicant of the right to designate a secondary addressee at the time of application for the policy, on a form provided by the insurer, and at any time the policy is in force, by submitting a written notice to the insurer containing the name and address of the secondary addressee.

Fla. Stat. § 627.4555(1).

CASE NO. 3:23cv436-MCR-HTC

invoice for a reinstatement payment. Instead, Whitney Bank received only reinstatement documents, which it asserts were impossible to complete because the documents required information pertaining to the insured, who had assigned the policy to Whitney Bank 20 years earlier. Whitney Bank also alleges it was unaware that it could designate a secondary addressee to receive notification of lapses. On September 22, 2022, Whitney Bank's counsel issued a formal demand for reinstatement of the policy, and Whitney Bank remains willing to pay all necessary premiums required to reinstate the policy; however as of January 2023, when suit was filed, the policy had not been reinstated.

The Complaint asserts four causes of action: breach of contract based on the violation of the policy's notice requirements and Fla. Stat. § 627.4555 (Count I), breach of the implied covenant of good faith (Count II), wrongful termination of a life insurance policy (Count III), and in the alternative, unjust enrichment (Count IV). Jackson moves to the dismiss.

**Discussion**

A federal complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Rule 12(b)(6), a complaint is subject to dismissal if it fails to state a claim on which relief can be granted. When considering a motion to dismiss on this basis, courts accept

CASE NO. 3:23cv436-MCR-HTC

all "factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314, 1321 (11th Cir. 2018) (internal marks and quotations omitted). The factual allegations need not be detailed but must present "a claim to relief that is plausible on its face" when viewed in this manner. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility requires factual allegations sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Mere legal conclusions are not accepted as true. *See Iqbal*, 556 U.S. at 678. Also, in this context, courts ordinarily do "not consider anything beyond the face of the complaint," *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007), unless a document attached to the motion to dismiss is "(1) central to the plaintiff's claim, and (2) undisputed," such that its authenticity is not challenged, *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

Counts I and II sound in contract. In Florida, "[t]he elements of a breach of contract claim are (1) a valid contract; (2) a material breach of that contract; and (3) damages." *Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999) (citing *Abruzzo v. Haller*, 603 So. 2d 1338, 1340 (Fla. 1st DCA 1992)). A claim for breach of the covenant of good faith and fair dealing is evaluated using the same

analysis.[5]  *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1325 (11th Cir. 2012) (citing *Hospital Corp. of Am. v. Fla. Med. Ctr., Inc.*, 710 So. 2d 573, 575 (Fla. 4th DCA 1998)).

Accepting the factual allegations of the Complaint as true, as required at this stage of the proceedings, the Court finds that Counts I and II state plausible claims based on the policy language that required notice to be mailed and Whitney Bank's allegation that no such notice was sent or received prior to the policy's termination. Whitney Bank also alleges that this failure to send notice as required by the contract was part of a deliberate pattern of conduct, including also the failure to use its correct address and the provision of contradictory information, intended to frustrate reasonable expectations of coverage under the policy, contrary to the implied duty to act with good faith and fair dealing, which is sufficient to state a claim.

Jackson argues that Whitney Bank misstates its notice obligations. Jackson denies any obligation to provide billing notices or notice of a policy lapse but acknowledges that the policy required notice of entering into the grace period.

---

[5] The breach of a duty of good faith is not actionable without the breach of a contract provision; it "must relate to the performance of an express term of the contract and is not an abstract and independent term of a contract which may be asserted as a source of breach when all other terms have been performed pursuant to the contract requirements." *Hospital Corp. of Am. v. Fla. Med. Ctr., Inc.*, 710 So. 2d 573, 575 (Fla. 4th DCA 1998).

CASE NO. 3:23cv436-MCR-HTC

Jackson also argues that in fact the documents referenced in or attached to the Complaint show that it complied with the required notice obligation. The notices on which Jackson relies, however, are attached to the motion to dismiss, not the Complaint.[6] Although the notices bear Whitney Bank's current address, there is no proof of mailing included and no affidavit accompanies them. Because Whitney Bank does not concede their authenticity or accuracy for purposes of this motion to dismiss and alleges it did not receive them, the Court will not consider those documents when evaluating the Complaint under Rule 12(b)(6). At most, Jackson has raised a question of fact that must be decided on a fully developed record. *See Day*, 400 F.3d at 1276 (only documents that are both central to the claim and undisputed may be considered when evaluating a motion to dismiss). Therefore, the motion will be denied as to Counts I and II.[7]

---

[6] With the motion, Jackson provided notices it asserts were sent to Whitney Bank at its current address, consisting of a payment notice for the quarterly premium amount due as of May 28, 2022 ECF No. 10–2; an annual statement for the policy for the year 2021–22, ECF No. 10–3; a notice of policy grace period dated June 27, 2022, stating that the grace period and coverage would terminate on July 31, 2022, unless the policy had a net cash value and certain exceptions applied, ECF No. 10–4; and a notice of policy lapse dated July 31, 2022.

[7] Jackson also argues that the statute, Fla. Stat. § 627.4555, expressly applies only to policies issued on or after October 1, 1997, and therefore does not apply to this policy, which was issued on May 28, 1993. *See e.g., Winer v. New York Life Ins. Co*., 190 So. 894, 899 (Fla. 1938) (stating a reinstatement results in a "continuance in force of the former contract," not a new contract). Whitney Bank argues that § 627.4555 applies because the 2018 reinstatement effectively issued the policy anew and incorporated the law existing at that time into its provisions. Whitney Bank argues that the cases cited by Jackson are distinguishable but cites no law to support its argument. The Court is skeptical of Whitney Bank's assertion, but because the contract claims

Jackson argues that Count III, "wrongful termination of a life insurance policy," is not a valid independent cause of action under Florida law, citing *Ayodele v. Primerica Life Ins. Co.*, No. 09-21267-civ, 2010 WL 3743814, at *2 (S.D. Fla. Sept. 22, 2010) (noting a "pleading infirmity" in that the plaintiff had "not set forth the elements of a cause of action for 'Wrongful Termination of Life Insurance Policy' or cite[d] any authority to support that such a cause of action exists"). Whitney Bank does not respond to the argument, and the basis for this claim (contract, tort, equity) is unclear. It is alleged that the policy was terminated in violation of its terms, that Whitney Bank is entitled to have it reinstated and to designate a secondary addressee, that Jackson refused to reinstate the policy, and that Whitney Bank is entitled to compensatory damages. Because of this lack of clarity and Whitney Bank's failure to respond to the argument that no such cause of action exists in Florida law, Count III will be dismissed.

In Count IV, Whitney Bank pleads unjust enrichment in the alternative. To state a claim for unjust enrichment, the plaintiff must allege that "(1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and

---

state a claim based on the alleged policy breach, the Court finds it unnecessary to address the applicability of this alternate statutory notice provision at this time and will reserve ruling on the issue.

CASE NO. 3:23cv436-MCR-HTC

retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendants to retain it without paying the value thereof." *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012) (citing *Fla. Power Corp. v. City of Winter Park*, 887 So. 2d 1237, 1241 n.4 (Fla. 2004)).  Ordinarily, there is no cause of action for unjust enrichment "where the parties' relationship is governed by an express contract . . . because the theory of unjust enrichment is equitable in nature and is, therefore, not available where there is an adequate legal remedy." *Frayman v. Douglas Elliman Realty, LLC*, 515 F. Supp. 3d 1262, 1287 (S.D. Fla. 2021) (quoting *Zarrella v. Pac. Life Ins. Co.*, 755 F. Supp. 2d 1218, 1227 (S.D. Fla. 2010)); *see also Diamond "S" Dev. Corp. v. Mercantile Bank*, 989 So. 2d 696, 697 (Fla. 1st DCA 2008) ("Florida courts have held that a plaintiff cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists concerning the same subject matter.").  Consistent with the Federal Rule of Civil Procedure 8(d)(2), and Florida law, however, unjust enrichment may be pled in the alternative to a claim for breach of contract, provided "one or more of the parties contest the existence of an express contract governing the subject of the dispute." *Frayman,* 515 F. Supp. 3d at 1287–88 (quoting *In re Managed Care Litig.*, 185 F. Supp. 2d 1310, 1337–38 (S.D. Fla. 2002)) (internal marks omitted).

CASE NO. 3:23cv436-MCR-HTC

Page 12 of 13

Neither Jackson nor Whitney Bank disputes that an express contract exists—the John T. Tyler life insurance policy, Policy No. 88004879.  Whitney Bank alleges in Count IV that it conferred benefits on Jackson by paying premiums due on the life insurance policy but Jackson cancelled the policy without providing notice.  Jackson does not contest the existence of the policy.  In response to the Motion to Dismiss this Count, Whitney Bank argues only that Jackson initially provided the wrong policy before suit,[8] *see supra* Note 2, and then failed to provide copies of the mailed notices before suit was filed.  As a result, Whitney Bank questions Jackson's "recordkeeping" abilities and is unable to verify the policy as accurate; therefore, Whitney Bank "asserts that [the policy] is invalid for purposes of [the] unjust enrichment count."  ECF No. 11 at 12.  While alternative pleading is permitted, this claim lacks plausibility.  The fact that Whitney Bank does not accept the authenticity of the copy of the policy that Jackson attached to its Motion to Dismiss is not the same as disputing the existence of a contract, which is not in dispute.  The only issue stated within Count IV itself is whether the policy was properly cancelled pursuant to its terms. The motion to dismiss will be granted as to Count IV.

---

[8] In reply, Jackson provided and email showing that it corrected the mistake two months before suit was filed.  ECF No. 19–1.

CASE NO. 3:23cv436-MCR-HTC

Accordingly, Defendant's Motion to Dismiss, ECF No. 10, is **GRANTED in part** and **DENIED in part**.  Counts III and IV are **DISMISSED**.

**DONE AND ORDERED** this 29th day of July 2023.

*M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**